NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 14-491(SRC) |
| v. | : | |
| ARMIA ALBER | : | OPINION |
| | : | |

**CHESLER**, District Judge

  This matter comes before the Court on the motion by Defendant Armia Alber ("Defendant" or "Alber") for early termination of supervised release. The United States of America (the "Government") opposes the motion. For the following reasons, Defendant's motion will be denied.

**I. BACKGROUND**

  On August 28, 2014, Alber pled guilty to an Information charging him with knowingly distributing child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1). (Crim. No. 11-115, ECF Nos. 19–23.) On August 20, 2015, this Court sentenced Alber to a 60-month term of imprisonment, to be followed by a 5-year term of supervised release with a number of conditions, including computer monitoring, mental health treatment, restricted contact with minors, polygraph examination, and sex offender registration. (ECF No. 26.)

  On April 23, 2018, Alber began serving his 5-year term of supervised release (ECF No. 28), which is set to expire on April 22, 2023. On November 13, 2020, the Court received a letter from Alber seeking assistance to file a motion for early termination of his supervised release. On November 17, 2020, U.S. Probation ("Probation") responded to Alber's request, explaining to the

Court that Alber "does not meet the minimal criteria for early termination based on his sex offense and the third-party risk associated with his instance offense." (ECF No. 30.)  The same day, the Court denied Alber's application and ordered that supervision be continued. (ECF No. 30.)

On January 31, 2022, the Court again received a letter from Alber seeking early termination of his supervised release. (ECF No. 31.)  On May 3, 2022, defense counsel provided a Supplemental Submission in Support of Motion for Early Termination of Supervised Release Pursuant to 18 U.S.C. § 3564. (ECF No. 33.)

**II.   DISCUSSION**

A. <u>Defendant Waived His Right to Seek Early Termination of Supervised Release.</u>

As set forth in Alber's plea agreement, Defendant agreed not to "file any appeal, any collateral attack, or any other writ or motion . . . which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 26." (ECF No. 22 ¶ 9.)  According to the Government, this waiver extends to the instant motion.

A defendant may forfeit the right to seek early termination of supervised release through a waiver of his right to appeal, provided: "(1) [] the issues [defendant] pursues on appeal fall within the scope of his appellate waiver and (2) that he knowingly and voluntarily agreed to the appellate waiver, unless (3) enforcing the waiver would work a miscarriage of justice." *United States v. Damon*, 933 F.3d 269, 272 (3d Cir. 2019) (quoting *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008)).  Generally, "plea agreements, although arising in the criminal context, are analyzed under contract law standards." *Id.* (quoting *Corso*, 549 F.3d at 927).

2

In finding that the plea agreement at issue waived the defendant's right to pursue early termination of supervised release, the Third Circuit in *Damon* held that the term "sentence" within the agreement "unambiguously include[d] the imposition of a term of supervised release." *Id.* (citing *United States v. Floyd*, 428 F.3d 513, 516 (3d Cir. 2005)).  In so finding, the court held that "[t]he ordinary meaning of 'sentence' can only reasonably be read to include all forms of punishment or penalties imposed on a defendant." *Id.* at 273.  According to the panel, this reading was further supported by the structure of the plea agreement:  Under the heading "Sentencing," the plea agreement provided that, "pursuant to 21 U.S.C. § 841,"[1] the sentencing judge "will impose penalties that include, at a minimum . . . supervised release" and that the sentencing judge "must require [the defendant] to serve a term of supervised release of at least 5 years . . . ." *Id.*

Here, Defendant's plea agreement contains waiver language that is functionally indistinguishable to that which the Third Circuit considered in *Damon*.[2]  *Compare with United States v. DeSanto*, 2022 WL 686380, at *2 (D.N.J. Mar. 7, 2022) (refusing to find defendant's motion waived based on the plea agreement on the grounds that the waiver language at issue was materially different from that which was considered in *Damon* and ambiguous).  Similarly, the structure of Defendant's plea agreement is analogous to that considered in *Damon*—the language

---

[1] Section 841(b)(1)(A) states that "any sentence under this subparagraph shall . . . impose a term of supervised release of at least 5 years in addition to such term of imprisonment."

[2] "In the agreement, Damon waived the right to file 'any appeal . . . which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 33.'" *Id.* at 273.

3

found under within the section of the plea agreement entitled "Sentencing" is largely identical as that considered by the Third Circuit.[3] (ECF No. 22.)

Alber's plea agreement unambiguously serves to waive any challenge to Alber's term of supervised release on the condition that the Court imposed a sentence within below the Guidelines range for an offense level of 26. Because the Court sentenced Defendant to 60 months—below the Guidelines range resulting from an offense level 26—he is bound by this condition to the agreement. Defendant is barred from making the instant motion and it fails accordingly.

B. In Any Event, Early Termination of Supervised Release is Unwarranted.

Pursuant to 18 U.S.C. § 3583(e)(1) and Federal Rule of Criminal Procedure 32.1, this Court may, after consideration of the relevant factors in 18 U.S.C. § 3553(a), terminate a term of supervised release and discharge the defendant at any time after the expiration of one year of supervised release if the Court is satisfied that the action is warranted by the defendant's conduct and the interest of justice. These factors include:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics, 18 U.S.C. § 3553(a)(1);
>
> (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

---

[3] While Alber's plea agreement cites to 18 U.S.C. 3583, rather than 21 U.S.C. § 841, for the requirement that the sentencing judge impose a term of supervised release of at least 5 years, Section 3583 makes clear that a term of supervised release is a "part of the sentence." 18 U.S.C. 3583 ("The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include *as a part of the sentence* a requirement that the defendant be placed on a term of supervised release after imprisonment . . . .") (emphasis added).

4

(3) the kinds of sentence and sentencing range established for the defendant's crimes, § 3553(a)(4)(A);

(4) pertinent policy statements issued by the United States Sentencing Commission, § 3553(a)(5);

(5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

(6) the need to provide restitution to any victims of the offense, § 3553(a)(7).

"After considering these factors, this Court may provide relief only if it is satisfied that early termination is warranted by the defendant's conduct and is in the interest of justice." *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020) (citing 18 U.S.C. § 3583(e)(1)). Although "extraordinary circumstances may be *sufficient* to justify early termination of a term of supervised release," they are not "*necessary* for such termination." *Id*. Nonetheless, "*generally*, early termination of supervised release" under § 3583(e)(1) will be proper" as a discretionary matter "only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it." *Id.* (quotation marks omitted). "That is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced," as § 3553(a) requires, a reviewing court "would expect that something will have changed in the interim that would justify an early end to a term of supervised release." *Id.*[4]

---

[4] Furthermore, the Guide to Judiciary Policy, Volume 8E, § 360.20(c) states that after 18 months of supervised release, there is a presumption in favor of recommending early termination for persons who meet the following criteria: (1) the person does not meet the criteria of a career drug offender or career criminal as set forth in 28 U.S.C. § 944(h) or has not committed a sex offense or engaged in terrorism; (2) the person presents no identified risk of harm to the public or victims; (3) the person is free from any reported violations over a 12 month period; (4) the person demonstrates the ability to lawfully self-manage beyond the period of supervision; (5) the person is in substantial compliance with all conditions of supervision; and (6) the person engages in appropriate prosocial activities and receives sufficient prosocial support to remain lawful well beyond the period of supervision. As Probation has recognized, this presumption is inapplicable. (ECF No. 34-1 ("Based on his background and history of supervision, Mr. Alber does not meet the minimal criteria for early termination based on his sexual offense and the third-party risk associated with his instant offense.").)

Alber's criminal conduct was serious and shocking. He possessed and distributed a substantial amount of child pornography, including material involving a prepubescent minor or a minor under the age of 12, and certain of which depicted "sadistic and violent sexual abuse of a minor," specifically including the depiction of "adults engaging in sexual acts with prepubescent children." (PSR ¶ 32.) It is within this context that the Court must consider whether early termination is merited by the defendant's conduct and is in the interest of justice. Notwithstanding Alber's achievements since his sentencing and the purported difficulties which he faces in light of continued supervision, the Court is satisfied that the early termination of Alber's supervised release is unwarranted.

The Court commends Alber's receipt of a bachelor's degree from New Jersey Institute of Technology and continued gainful employment. While laudable, these accomplishments do not warrant the relief he seeks. Similarly, the difficulties which Alber purports to face in light of the disabilities imposed by a continued term of supervised release are not so great as to warrant the termination of these conditions. In particular, Alber claims that the following conditions "hinder[], rather than help[], [his] transition into the community" (ECF No. 33 at 11):

- *Travel Restrictions*. While Alber seeks "more freedom to travel for family needs or job training" (ECF No. 31 at 2), Probation has explained that he "is permitted to travel inter-state for work purposes and was granted permission to attend his sister's wedding in Egypt in 2019." (ECF No. 34-1.) While these restrictions undoubtedly "make[] privacy more difficult" and "place[] burdens on his family," they do not unduly interfere with Alber's transition into his community. (ECF No. 33 at 18.)

- *Digital Monitoring*. Alber claims that he recently declined a promotion with his employer because, as a condition of his supervised release, a software monitoring program would need to be installed on office equipment. He also appears to complain about the extent of the monitoring software's intrusion into his internet activities. As Probation recognizes, Alber's status as a "sex offender[] on supervision" poses potential third-party risks. (ECF No. 34-1.) Continued monitoring of Alber's digital life and computer access is particularly important in light of his prior use of computers

6

    to possess and distribute child pornography and the monitoring contributes to Probation's mission to "protect[] the public while also ensuring [Alber] remains gainfully employed." (ECF No. 34-1.)[5]

- *Regular Polygraph Testing.* Alber claims that the polygraph examinations, which occur once per year, are "particularly onerous." (ECF No. 33 at 11.) Annual examinations, while perhaps uncomfortable, are not impeding Alber's transition into the community.

- *Unannounced Inspections.* Alber makes the comment that "[t]he requirements of supervision are, at this point, slowing rather than helping Mr. Alber' full transition into the community." (ECF No. 33 at 17.) Alber identifies such examples as his failure to join a gym for fear of "probation just showing up" and his decision not to obtain another job for fear of "probation hassling over every little nuance." (ECF No. 33 at 18.) Notwithstanding any difficulties that Alber faces as a result of the conditions of his supervised release, these conditions are reasonable in light of his conviction.

In short, the interest of justice would not be served by the early termination of his supervised release. While Alber may complain that the conditions are "demeaning" and "performative," the Court admonishes him that these conditions were imposed as a result of his serious criminal behavior involving the sexual exploitation of children.

### III.   CONCLUSION

Even if Alber could overcome the waiver in his plea agreement, he is not entitled to the presumption that his supervised release should be terminated early nor do his current circumstances warrant a departure from a sentence which the Court has previously determined to be sufficient, but not greater than necessary when the sentence was first pronounced. His motion will be denied.

---

[5] Relatedly, Alber complains that his attorney-client communications may be subject to monitoring by Probation. (ECF No. 33 at 14.) The Government represents that Probation has informed Alber previously of the fact that it can access written information on an electronic device. (ECF No. 33 at 14.)

/s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: May 25, 2022